Mr. Hidalgo is a 52-year-old man who has lived in the United States for more than 30 years. as a lawful permanent resident, the last two years in immigration detention in a remote facility now in Texas. Over two decades ago, he was convicted of the crime of attempted criminal sale of a controlled substance in the third degree, for which he wasn't sentenced to one day in jail, and he doesn't contest that the crime subjects him to deportation. The issue is whether the crime deprives the immigration judge of jurisdiction to hear his asylum claim that he would be persecuted in the country where two of his family members have been killed, and the rest live under the continued threat of violence. And that turns on whether or not it's an aggravated felony, because people convicted of an aggravated felony are disqualified from asylum under 8 U.S.C. 1158b2. The government contends it is because the statute of conviction is akin to an attempted transfer. They're incorrect for two reasons. The attempt liability, as this court well knows, requires both the intent to commit each and every element of the substantive offense and a substantial step beyond mere preparation towards that offense. Mr. Hidalgo's crime fails both prongs of that analysis. Let me start with substantial step. Even if we assume arguendo, that he can form the requisite mental state, the job of this court under the categorical approach is then to look at the minimum conduct, what does it actually look like to attempt to offer to sell or give, and measure that minimum conduct against the federal standard for an attempted transfer, a substantial step towards a transfer. Recall that this court, of course, has already held in Pascual that the offer is akin to a substantial step to a transfer. But we don't have an offer here. We have an attempted offer. And by definition, attempt triggers liability further back in the factual chain. And so now we have the harder question of whether that earlier point in time satisfies the federal definition for a substantial step. And it doesn't. The thrust of your argument was that it was focused on the mens rea, that we had here an attempt to attempt, and you didn't think that that's something that the law does not recognize. It fails under both prongs. If I could quickly finish. Absolutely. And then I'll turn quickly to the other prong. New York law says that for an offer to qualify, it has to be a bona fide offer, as the court pointed out in Pascual. And so if police are monitoring a cell phone or sees a cell phone with a text that says, would you like me to get you cocaine, that's a bona fide offer if the person has the actual intent and ability to follow through on that. But if the text failed to go through, then we have someone who came dangerously close to making a bona fide offer. That's what's required under New York state law for an attempt. Dangerously close to making a bona fide offer, but they didn't possess drugs. They didn't attempt to obtain drugs. They didn't make any agreement with any offeree or have any communication with anybody else whatsoever. And under this court's precedent in Del Vecchio and other cases, that doesn't come close to what this court has said is required for a substantial step towards a transfer. This court said that, quote, evidence of a verbal agreement alone without more is insufficient as a matter of law to support an attempt conviction. And in Del Vecchio, they had agreement as to price, agreement as to quantity, agreement as to the place of transfer, and this court said that wasn't enough for a substantial step. If that's not enough for a substantial step, then a mere failed offer without drugs, without attempt to get drugs, without agreement, without communication with anybody else, doesn't come close. My concern with this at both prongs of your analysis, though I have to confess I was focusing mostly on the mens rea, is that I don't see any New York case that has allowed anyone to be convicted on the theory you're positing here. And so while we apply the categorical approach, we don't do it in a fanciful way. What basis is there to think that New York would allow anyone to be convicted based on the theory or the hypothesis you're positing? I can point the court to a court of appeals case that says where a crime is simply communication, failed messages, make out attempt. But frankly, more importantly, I don't need to, because the test that you're referring to, I believe, is the government's argument about the realistic probability test that the Duaneus Court referred to, saying to show that it's not some fanciful legal imagination, you have to show me a case of actual prosecution. But in situations where the statutory text is the minimum conduct, the attempted offer, no realistic probability is you don't need a case to establish realistic probability, because it doesn't take any legal imagination. The four cases that are in New York, New York follows the general rule that an attempt to commit a crime that is itself an attempt is not recognized as a crime. It's not a violation of law. You've acknowledged that. But what I understood your argument to be was, well, they allow pleas for crimes that are not really crimes. But I didn't see any attempt to attempt plea that you pointed us to. So I just don't see how the hypothesis you're giving us is one that, you know, satisfies Moncrief's, that we don't just apply legal imagination here. I think comparing the Supreme Court's decision in Duaneus and Malouly is instructive here, because as the third, the fourth, the seventh, excuse me, not the seventh, the ninth and the eleventh circuit have held, it doesn't take legal imagination and you don't need to demonstrate an actual case of prosecution where the statutory text is the minimum. And here we have New York refusing to recognize attempts to commit attempts as crimes. Correct. So it's not a matter of just not applying legal imagination. We know that the state does not recognize that. All the examples you've given us of pleas to something that might not be a crime involve, you know, recklessness versus specific intent. They don't involve this kind of situation. So what is the – what reason is there for us to think that New York would ever allow anybody to be convicted of attempt to attempt in any circumstance? Or an attempt to offer. I see that my time is almost up, and there's one critical piece of record evidence I want to draw the Court's attention to, but let me quickly answer your question. What we have are two things. We have the statutory text that says the words attempt to offer, and we have People v. Foster from the Court of Appeals, that's 19 New York 2nd, 150, that said pleas to impossible crimes are permitted. And we have the four circuit courts. But not with this. It's – what they've allowed is the difference between the recklessness rather than specific intent. That's the only examples that I think you gave us. Respectfully, the principle articulated in Foster, and I could give you many other cases where they've said impossible crimes are allowed in the plea context. It was recognized by this Court in Gill v. INS, by the Fifth Circuit in Dale, and by many New York cases, that it's not about the specific attempt to act recklessly, but the general principle that as a matter of public policy, there are good reasons why we let people plead guilty to impossible crime sometime, and that's a general principle that pervades over New York law. If I could quickly draw the Court's attention to one piece of record evidence that I think is – even if the Court finds that this is an aggravated felony, you are still – Mr. Hidalgo is still eligible for cat relief. And there is a critical piece of record evidence at page 400 of the record that entirely undermines the Board of Immigration Appeals' determination that there was no prejudice for what they found to be the wrongful exclusion. It's a letter from the witness who was excluded from testifying that gives testimony directly to the contrary of the essential factual findings that led to the denial. The findings that led to the denial were no – What's the letter? The letter is from his daughter, and it says, and I quote – excuse me – and she was one of the witnesses that was excluded that FALPA, which is the organization that is doing the harm, quote, found out that the brother of the deceased female – referring to Mr. Hidalgo – is in New York and, quote, has problems, and that FALPA was, quote, waiting for him to take revenge. The agency admitted the letter. That's correct. It didn't do it by telephone, but it admitted the letter. That's correct. So this was before the agency. What's the argument? The argument is that the agency entirely ignored this letter. When they found there was no prejudice, the entire denial of cat hinged on the conclusion that there was no evidence that they knew of him. And what's the error for purposes of our review? There's two errors. There's a due process violation in terms of violating the – Allowing her to testify by phone. Right. Full and fair hearing. And what's the other? The other is 8 CFR 208.16.C.3. That's the regulation that specifically in the cat context requires them to consider all evidence. If you – He said they considered it but didn't give it the weight you want. What is our review? They didn't consider it. There is no mention of it in the immigration judge's decision whatsoever. He only discusses testimony. And the Board of Immigration Appeals in passing mentions the existence of the letter but seems ignorant of its contents because it says there's no evidence that there were threats against him and no evidence that there was knowledge of him. I thought it was that despite threats, several family members continued to reside in the same city. So I didn't think there was a refusal to recognize that there were threats. Am I missing something? Maybe I'm miscommunicating. It's not that they credited that there were threats against the family and they credited that there were deaths in the family. They said there were no threats against Mr. Hidalgo and that there was no evidence that the persecutors even knew about Mr. Hidalgo. In fact, the very witness who was excluded was prepared to testify to the contrary on both points. Thank you very much. We'll hear from you. Thank you. Good morning. Jane Shoffner for the respondent. This court has already decided not once but twice that a conviction under New York is categorically a drug trafficking aggravated felony. During the proceedings before the immigration judge, Petitioner's Counsel actually conceded that the immigration judge was bound by Pascal, conceded that his conviction rendered him ineligible for asylum, also rendered him ineligible for withholding of removal as an alien convicted of a particularly serious crime, and merely sought to preserve the aggravated felony argument for purposes of appellate review. During the proceedings before the immigration judge The argument is not that the substantive crime is not categorically an aggravated felony, but that an attempt to commit this crime is not because it has the potential for being an attempt to attempt. That is their argument. Let's hear your response to that. The immigration code at 8 USC 1101A43U also makes aliens who engage in attempts to commit aggravated felonies removable. There is no question that the federal If you allow someone to be convicted of attempting to attempt drug trafficking, are you saying that that would be an aggravated felony? If New York State allowed that, the immigration code does provide for attempts to commit aggravated felonies to be removable offenses. How can that be when it's not recognized in law, recognized in federal law as an attempt to attempt? Do you understand what the problem with that is, and why it's generally not recognized, including by New York? Right, I do recognize what the problem with that is, and why it's not recognized by New York law. Petitioner's argument really boils down to a quarrel with what happened before the New York State courts. He's arguing that he didn't have the requisite mens rea to commit an attempt to attempt, that New York State doesn't allow attempts to attempt. If that's his argument, then that argument belongs before the state court. He should be pursuing an attack on his conviction with the state court. The fact is, he was convicted under both New York public law 100 and 220.39. This court in Pascal determined that aggravated felony drug trafficking also includes attempts. In this case, the grand jury indicted him for under 220.39. The attempt charge was part of a sentencing reduction scheme. The offense itself already includes attempts. The addition of the attempt charge was merely an effort to reduce his sentence. We would argue that these issues have been decided already, as Petitioner's counsel, in fact, conceded before the IJ. The aggravated felony conviction renders him ineligible for asylum. He conceded before the IJ that this is a particularly serious crime, that there is no exception for drug trafficking crimes. That leaves his application for deferral of removal under. Isn't the crime that he committed defined by what he was sentenced for? He was convicted of both 220.39, which this court has already held, is a drug trafficking aggravated felony for purposes of immigration law, and convicted under New York Public Law Section 100, which covers attempts. The conviction for 220.39. When you say he was convicted of both, do you mean that the sentence made reference to both in passing the sentence? The sentence was imposed for both of those violations of both those statutes? I'm not sure what specifically the sentence refers to. I know that he was sentenced to five years of probation. What do you mean when you say he was convicted for these things? The record of conviction shows that he was convicted under New York Public Law Section 110 and 220.39. And that is that he was convicted of 220.39. That's why 110 is there. It would be the same as in a federal conviction having Section 2 added to the substantive crime or the attempt or conspiracy section added to the substantive crime. I mean, if you're arguing to us that he was convicted of two separate crimes based on that, that doesn't make sense. The – sorry, I've lost my – I understand that the reason the two statutory sections are cited is because together they support attempts to commit the substantive crime. Yes. Okay, so what's your argument now? Our argument is that the court has already decided that convictions like this are drug trafficking aggravated felonies categorically under federal law, that they include the requisite intent and substantial step. You said that with respect to attempt to commit this particular drug trafficking crime? Well, actually, in United States v. Gill at 748 F. 3rd at 495, this court did say that an individual who was convicted under New York Penal Law 110 and 220.39, the exact same conviction here, that an attempted sale is considered an aggravated felony under federal immigration law. A petitioner would argue that that statement is dicta. Nevertheless, the court is on record as having concluded that an identical conviction is considered an aggravated felony under the immigration law. And that would render him ineligible for asylum. He's conceded he's not eligible for withholding. This court lacks jurisdiction to review his factual challenge to his cat claim. The evidence he made regarding the exclusion of telephonic testimony, the board acknowledged the immigration should have given greater consideration to that request. But the alien's daughter did provide a letter. The other unnamed relatives whose testimony. His contention is that the agency made a ruling that was incompatible with that letter, saying that there was no evidence. Is he correct in saying that when there was evidence, first of all, is he correct that that letter did constitute evidence of a threat against him? And is that compatible, if so, with a statement of the agency that there was no such evidence, as opposed to discrediting it or whatever? Without looking again at the letter itself, I can't say right now whether that's incompatible, but I can say that the challenge, that is a factual challenge. The daughter may have said one thing. The alien himself may have said another thing. Those are factual challenges that are beyond the scope of this. I know they're factual challenges if they're treated as factual issues by the adjudicating person, but we've had cases in which we have overturned an agency determination when the IJ said the, I remember a case in which I sat on around 10 years ago where the IJ said the petitioner has not contended that he was beaten, and the testimony of the petitioner was I was beaten. And if he had said I disbelieve, that would be a different matter, but the IJ said there is no such evidence and there was evidence. Is this a case like that? This is not a case like this because Mr. Hidalgo himself during the hearing at pages 153 and 154 when asked whether he had ever been threatened, he said no. His daughter, and again I'm not, I don't have the daughter's letter committed to memory. Do you have it with you? I do. Take a look at it. Because, I mean, you know, your adversary relies on this and then points to the IJ's statement. Let me get that in front of me. That this is at page 8 of the IJ's decision. He has never received any threats, nor has he been harmed in the past. There is no evidence that the Camillo family or members of the FALPO even know of the respondent's existence. And I gather counsel's argument is that the daughter's letter belies those two statements. Okay. Where do we find that letter, first of all? The letter is at page 400, but I'm also looking at 400 of the record. I'm also looking at the board's decision. It's important to note that it's the board's decision that is before this court for review, not the immigration judge's decision. And the board does not say in its decision anything about whether the Camillo family knows about him or has threatened him. The board's decision acknowledges that the nephew and sister were killed, but that other families continue to live there. They've not been harmed. He was not personally at risk. He was not there when his nephew and sister were killed. He didn't have anything to do with the prosecution of his nephew's killer, and he was not threatened or harmed in the past. And that's wholly consistent with Mr. Hidalgo's own testimony at page 153 and 154. And with the daughter's letter? The daughter says, my family is really afraid of my father coming back to this country, and these people take revenge against my father. That goes to their fears. They are waiting. Let's see. Now that they found out the brother of the deceased female is in New York, has problems, and they are waiting for him to take revenge with whoever from her family since they are still threatening. All right, well, counsel's going to rebut, so he'll highlight for us the most relevant part of the daughter's letter. All right, anything else? No, we would simply ask that the court dismiss the Catt claim for lack of jurisdiction and deny the petition for review in the remaining part. Mark. A few very quick points, and then the daughter's letter. One, the statement in U.S. v. Gill is the epitome of dicta. It was in the factual recitation, without citation, about a crime that was not the subject of the decision that followed. So that is that. In regard to the government just made the argument that they didn't make in their brief and that the board didn't make, that an attempt to attempt to transfer is an aggravated felony. That is entirely inconsistent with this court's decision in $500,000 in U.S. currency, 62F3rd 59, where the court called it, quote, absurd to interpret a federal statute to create liability for attempted attempt. Let me turn quickly, though, to the issue of the daughter's letter. It's true. He testified that he hadn't personally received threats, but he had been threatened. And whether you look at the immigration judge's decision, which the relevant part was just quoted by the court, or the board's decision that says the immigration judge also found that there was no evidence that the Camillo family or members of FALPO even know about the respondent's existence. That's the Board of Immigration Appeals. Page 5, excuse me, page 5 of the certified administrative record, page 3 of the decision. When you compare that statement or the I.J. statement and where there is only brief analogy in the BIA decision, you're permitted to look at the I.J. decision as well. Whichever you look at, when you compare that to the statement of the daughter that FALPO, quote, that the brother of the deceased female, referring to Mr. Hidalgo, is in New York and has problems, that shows that they knew about him, and that FALPO was, quote, waiting for him to take revenge. That shows threats against him. Those weren't considered because the testimony was wrongly excluded. The board already found that the testimony was wrongly excluded, simply denied that claim based on lack of prejudice. We can't get this one wrong. Mr. Hidalgo has been sitting in detention for two years litigating to get to this court because he is terrified that he will be killed if he's returned to the Dominican Republic. FALPO says that he would be more at risk than the remaining family members who've stayed there. Help me out again. Sure. And I don't think we need to show that he's more at risk. The finding was that he wasn't, there were no threats against him. Tell me what it is that FALPO was, quote, waiting for him to take revenge. Those are the daughter's words. What comes before that? We're waiting for him. Just read this. Sorry, Your Honor, you're going to have to give me a second to find it. Here we go. Dear Judge, I'm Rosalina Hidalgo, daughter of Sylvia Hidalgo. I address you to, I'm sorry.  Dear Judge, I am Rosalina Hidalgo, daughter of Sylvia Hidalgo. I address you in order to explain the situation with my family, and that is that Dario Camilo was not imprisoned because he is powerful, and now they found out that the brother of the deceased female that is in New York has problems, and they are waiting for him to take revenge with whoever from our family since they are still threatening, and they say that Dario Camilo is dead, but the power now is held by his brother and his son. And it goes on from there. What I'm concerned about is the language of the letter suggests take revenge against any member of the family, and the IJ and the BIA were concerned about how the threats in terms of the fact that most of the family still lives there. The prejudice analysis under this Court's precedent is whether there's a realistic possibility that the outcome would have been different. I understand that, but to the extent your error is failed to recognize that there was a threat against him, you're basing that on waiting for him, but then it says to take revenge against anyone. Respect? And so it wasn't a suggestion that they were particularly targeting him, or am I missing something? I think you're missing one thing, which is that the board has already found legal error in the exclusion of the testimony. That's the legal error. The fact is what is it in that letter that suggests that had it been carefully considered, him would suggest particularly your client rather than any other member of the family. Respectfully, that's not exactly the question in the prejudice analysis. The question is if that witness who wrote that letter had testified, what suggests that there's a realistic possibility that the outcome would have been different. And so we don't need to know for certain that her testimony would have did more, but is there enough in that letter to make this Court uncomfortable that it's possible, realistically possible, that if she testified, she would? So it is not your position that this letter alone had it been brought out and testified to, in those words, would have established your client's case? It's my position that it's entirely possible that the letter alone, if considered as it should have been, would have altered the outcome, but that's not we don't need to make that. I have a problem with an understanding of whether what the daughter is saying is something that constitutes cognizable evidence. If the daughter says these people want revenge and are going to do this, what shows that she's competent to assert that as a witness? I mean, certainly if she were testifying in a Federal court, she wouldn't be allowed to testify about the intentions of other people. She could testify to things that they had said, things that they had done, so forth, that support the conclusion that they are, that they want to kill him. But just for her to say they want revenge against him, why is that competent evidence? Well, in immigration court, hearsay evidence is admissible. I know, but this is not just hearsay. It's evidence that's outside her competence. One person can't just testify, assert, make assertions about other people's intentions. Well, we just don't know the basis of her knowledge, which is what I think the Court is getting at. The letter doesn't lay out the basis of her knowledge. That says information within your client's knowledge. And I was going to ask you, did he go to the BIA on appeal and say, had my daughter testified telephonically, she would have fleshed this out by explaining X? If, I mean, we have no basis in the record to think that she could say anything more than in that letter. And if she can't say anything more than is in that letter, there's no reason to think he's been prejudiced. So where, I mean, you had an opportunity to raise this to the BIA. What's the basis to think she could have said anything more? This argument was raised to the BIA, and the daughter's letter was cited to the BIA. I understand, and I'm suggesting to you that that's not enough. So what more is there to think that the daughter, had she testified telephonically, could have explained this in a way that would have benefited your client? The dynamic here is that the threats and the killings all happened in the Dominican Republic. Mr. Hidalgo, of course, was not in the Dominican Republic. And Mr. Hidalgo is illiterate and was unable to read any of the stuff that he was receiving. He desperately wanted the family members who had firsthand knowledge of the case to know what was going on. I understand that. But if you were in front of a judge, the judge would say, give me a proffer. What's she going to say on the telephone? Did you do that for anyone on this record? At what stage? I'm sorry. Look, the IJ has the letter. You're saying, not good enough. He should have taken her telephone testimony. So the natural question is, what more could she have added telephonically so that we can say the exclusion of that was prejudicial, which is your argument? Sure. The counsel below actually wanted to make a motion where they would have laid out all of that. And when they stated their intention to make that motion, the immigration judge said, I'm going to take your request as an oral motion denied. Don't submit anything in writing. And so they were deprived. I'm not sure I remember seeing that in your papers, that that's the error here, is not being allowed to make that. That's not the only error here. But when you're thinking about why wasn't this laid out more fully in the record below, it's entirely appropriate to think about the ways that the immigration judge deprived counsel of the opportunity to lay out the record more fully. And that's an error cited to the BIA. It was all cognized under one claim about the failure to allow testimony from the critical witnesses that had firsthand knowledge of the events. It was my impression, so correct me if I'm wrong, it was my impression that although there was a denial of telephonic testimony, that your client had the opportunity to submit more evidence by affidavit or otherwise and could have obtained a more elaborate affidavit or other form of testimony from the daughter that would have fleshed this out. Am I mistaken in that? And if I'm not mistaken, why doesn't that nullify, essentially nullify the error, if it was error, to not permit telephone testimony? Sure. So it's correct that there was approximately two months between the time the telephonic testimony was denied and the individual hearing, and this letter was obtained during that period. Why shouldn't your client have submitted, if he had the opportunity to submit fleshing out affidavits, why didn't he do so? Well, he did submit a sworn statement that was this. He submitted this letter that's here. But there was some very serious logistical problems with a family that is functionally in hiding in the Dominican Republic and coordinating with them. What happened was when the immigration judge concluded testimony, they said, I'm going to give you a period of time, I think two and a half weeks, to submit a closing statement that would have been able to marshal this evidence. And then the decision was issued before counsel even had the opportunity to marshal the evidence before the deadline passed. And so the question is that there was a logistical problem. After all, you were proposing to have these people available by telephone. Yes, that's correct, Your Honor. They were going to be available by telephone for a court proceeding. Presumably they were available by telephone to talk to about getting an affidavit. I can't. There's nothing in the record that indicates what steps were taken by the counsel that represent them below. You can't argue to us that the reason that I think it's almost two months that they had to, between the adverse ruling on the telephone and the decision, you can't argue as to us that it's logistics that made that impossible. You were proposing to make these people available by telephone. The legal issue is whether the testimony was wrongfully excluded and whether there was prejudice from that. Could they have fixed that problem in other ways? Maybe, maybe not. But it was a legal error to exclude that testimony. And the question is, is it realistically possible? Is it realistically possible that the outcome would have been different? This letter gives you more than enough to say there is a realistic chance that the outcome could have come out differently if somebody was able to testify about threats against him and about the persecutor's knowledge of him, because those were the critical findings that underlied the IJ and the board's decision. All right. Thank you. Thank you, Your Honor. We're going to take this matter under advice.